IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Cheryl Compton, John Mills, Jung Moon, Jordan W. Bolden, Brett M. Alexander, Ashley Bryan, Ryan P. Burrus, Steven Hill, Donald Griffith, John Harris, Adam Kahn, Jim Kohr, Dianne Lee, Steven Tray Lott, Jonathan McFarland, Johnny Medina, Kaare Melby, Keith William Rose, Alex Schoenstein, Casey Smith, William Smith, Brian Alan Staack, Bradley S. Veltte, and Frederick L. Vickers, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| St. Louis Metropolitan Police Department, | ) ) |
| and | ) ) |
| The Board of Police Commissioners of the St. Louis Metropolitan Police Department, | ) ) ) |
| and | ) ) |
| Richard Gray, Jerry Lee, Bettye Battle-Turner, Thomas Irvin, and Francis Slay in their official capacities as the Board of Police Commissioners of the St. Louis Metropolitan Police Department, | ) ) ) ) ) ) ) |
| and | ) ) |
| The City of St. Louis, a local government entity, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

Plaintiffs offer the following in support of their motion for a temporary restraining order:

1

## I - Facts

1. Plaintiffs are political protesters conducting "Occupy St. Louis," an action in solidarity with Occupy Wall Street.  This case arises from Defendants threats to evict political protesters from Keiner Plaza and to strictly enforce curfew ordinances on November 11, 2011.

2. Defendants, acting in their official capacities on behalf of the St. Louis Board of Police Commissions, have denied Plaintiffs permits to remain in the park after curfew hours, and not allow Plaintiffs to keep their political signs, placards and tents, which Plaintiffs argue are symbolic speech.

3. Plaintiffs have been "occupying" the Keiner Plaza park on Market Street in downtown St. Louis for over one month.  Plaintiffs were assured through oral communications from Defendants that Defendants would tolerate Plaintiffs' activities in the park.  Defendants also tacitly complied with Plaintiffs' activities by allowing them to continue without interference for more than one month.

4. Plaintiffs are occupying Keiner Plaza in solidarity with "Occupy Wall Street," in order to express their opinions about economic and political affairs, to assemble together with like-minded people, to deliberate current events, and to increase participation in the democratic process by facilitating public dialogue.  Plaintiffs have erected tents as a form of symbolic speech.  Some of them are homeless due to hard economic times and the foreclosure crisis that plagues the lower and middle classes.  The tents also draw more attention to the protesters and allow protesters to convey their messages at all times to increase awareness.  (See Exhibit 1 "Declaration of the Occupation of New York City."  See also Exhibit 2, "Statement of Purpose of "Occupy St. Louis.")

Protesters requested a permit that would allow violations of the curfew ordinance. Defendants informed protesters that it was not possible and refused to dialogue further.

5. Defendants issued a notice informing Plaintiffs that Defendants would no longer tolerate Plaintiffs' activities as they have been tolerated to date. (See Exhibit 1 "Public Notice" (two pages long)).

## II - Temporary Restraining Order Standards

6. The standard for a temporary restraining order is the same as the standard for a preliminary injunction. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367 (8th Cir. 1991). Accordingly, in considering whether to issue a temporary restraining order, this Court should determine whether the Plaintiffs have a fair chance of prevailing on the merits, the threat of irreparable harm to Plaintiffs absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict upon Defendants, and the public interest. *See Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981); *see also Phelps-Roper v. Nixon*, 545 F.3d 685, 689-90 (8th Cir. 2008). "No one factor is dispositive of the request for an injunction; the Court considers all of the factors and decides whether 'on balance, they weigh in towards granting the injunction.'" *Johnson v. Board of Police Com'rs*, 351 F. Supp. 2d 929, 945 (E.D. Mo. 2004) (*quoting Dataphase,* 640 F.2d at 113).

7. An ex parte Temporary Restraining Order issuing without Notice pursuant to FRCP 655(b)(1) requires that specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and that the movant's attorneys certifies in writing any efforts made to give notice and the reasons why it should not be required. Support for Plaintiff's legal counsel attempted repeatedly to contact a representative of Defendant Board of Police Commissioners and was met

3

with a refusal to dialogue and instructions to "not call again" or they would "hang up," again because they would "not help." Moreover, official offices are closed due to the holiday, Veterans' Day. Therefore, an ex parte order is necessary and all required elements have been satisfied.

### III - Plaintiff has a Fair Chance of Prevailing on the Merits

8. The first factor to consider is whether Plaintiff has a "fair chance of prevailing" on the merits of his claims. This standard applies "where a preliminary injunction is sought to enjoin something other than [. . .] a state statute." *Planned Parenthood v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008). This standard is less "rigorous" than the standard applied "where a preliminary injunction [or temporary restraining order] is sought to enjoin the implementation of a duly enacted state statute." *Id*. The injunction requested here does not involve a state statute, but a city curfew ordinance. A fair chance of success on any one of Plaintiff's constitutional claims is sufficient to satisfy this prong.

9. The Plaintiffs have a fair chance of prevailing on the merits. Temporary Restraining Orders have issued and/or Courts have entered as non-frivolous Complaints filed across the nation upon by "Occupy" in at least the following localities: Nashville, Cleveland, Delaware, San Diego, Dallas, and Trenton.

"The right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum, or rather has been reserved for specific official uses." *Capitol Square Review & Advisory Board v. Pinette*, 515 U.S. 753, 761 (1995). In *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983), the Supreme Court outlined three categories of public property. A traditional public forum is an area "which by long tradition or by government fiat ha[s] been devoted to

4

assembly and debate." *Perry*, 460 U.S. at 45.  Examples include "streets and parks which 'have immemorially been held in trust for the use of the public and [. . .] have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496 (1939)).  This holding describes Plaintiff's desired activity precisely: their organization would like to assemble in a park, communicate thoughts amongst themselves as citizens, and discuss public questions relating to economic and social policy.  Furthermore, other groups have been allowed to use this same site to host events that require similar interaction with the public than Plaintiff proposes.  Therefore, under settled First Amendment jurisprudence, and specifically under the Supreme Court's holding in *Perry*, Plaintiffs' expression and assembly in this public forum is legally protected.

10. Even if the Fort Davidson State Historic Site is a limited public forum, "the government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities if that genre." *Travis v. Oswego-Appalachian School Dist.*, 927 F.2d 688, 692 (2d. Cir. 1991). Keiner Plaza has been used for many different political protests in the past.  Moreover, homeless persons were permitted to remain in the park all hours.  They are regularly used by organizations for organizational gatherings just like Plaintiff's.  It has been recognized that "content discrimination . . . may be permissible if it preserves the purposes of [the] limited forum, on the other hand, viewpoint discrimination . . . is presumed impermissible when directed against speech otherwise within the forum's limitations." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829-30 (1995).

### IV - Plaintiff Will Be Irreparably Harmed Absent Injunctive Relief

11. The second factor to consider in determining whether to issue an injunction is the threat of

5

irreparable harm to the movant. *Dataphase,* 640 F.2d at 114. Plaintiffs will suffer irreparable harm if an injunction does not issue. Absent an injunction, Plaintiffs will lose his right to freely gather with like-minded people in a park to discuss isssues of public concern.

"It has been recognized by federal courts at all levels that a violation of constitutional rights constitutes irreparable harm as a matter of law." *Cohen v. Cohama County, Miss.,* 805 F. Supp. 398, 406 (N.D. Miss. 1992). *See also Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action,* 558 F.2d 861, 867 (8th Cir. 1977) (a showing that a law interferes with the exercise of constitutional rights supports a finding of irreparable harm); *Apple of His Eye, Inc. v. City of Saint Louis, Mo.,* No. 4:08-CV-00592(HEA), 2008 WL 2568268, at *2 (E.D. Mo. June 24, 2008) ("There can be no sum, thing, or form of remuneration that might substitute, compensate, or repair a right in its entirety once taken"). Plaintiffs will therefore be irreparably harmed by the refusal of Defendants to allow them to continue their speech and assembly, because this denial deprives them of their constitutional rights.

### VI - The Balance of Harms Favors Issuance of Injunctive Relief

12. The third factor to consider in determining whether to issue a preliminary injunction is the balance of the threat of irreparable harm and the injury that granting the injunction will inflict on other interested parties. *Dataphase,* 640 F.2d at 114. In light of the harm Plaintiffs will suffer, this factor weighs in favor of entry of a preliminary injunction unless Defendants can demonstrate some harm from entry of an injunction. *See Sambo v. City of Troy,* No. 4:08-CV-01012(ERW), 2008 WL 4368155 (E.D. Mo. Sept. 18, 2008). Defendants cannot demonstrate any harm that will occur to them. The balance of harms weighs in favor of Plaintiff.

### V - Injunctive Relief Will Serve the Public Interest

13. The final factor to consider when determining whether to issue a temporary restraining order

irreparable harm to the movant. *Dataphase,* 640 F.2d at 114. Plaintiffs will suffer irreparable harm if an injunction does not issue. Absent an injunction, Plaintiffs will lose his right to freely gather with like-minded people in a park to discuss isssues of public concern.

"It has been recognized by federal courts at all levels that a violation of constitutional rights constitutes irreparable harm as a matter of law." *Cohen v. Cohama County, Miss.,* 805 F. Supp. 398, 406 (N.D. Miss. 1992). *See also Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action,* 558 F.2d 861, 867 (8th Cir. 1977) (a showing that a law interferes with the exercise of constitutional rights supports a finding of irreparable harm); *Apple of His Eye, Inc. v. City of Saint Louis, Mo.,* No. 4:08-CV-00592(HEA), 2008 WL 2568268, at *2 (E.D. Mo. June 24, 2008) ("There can be no sum, thing, or form of remuneration that might substitute, compensate, or repair a right in its entirety once taken"). Plaintiffs will therefore be irreparably harmed by the refusal of Defendants to allow them to continue their speech and assembly, because this denial deprives them of their constitutional rights.

### VI - The Balance of Harms Favors Issuance of Injunctive Relief

12. The third factor to consider in determining whether to issue a preliminary injunction is the balance of the threat of irreparable harm and the injury that granting the injunction will inflict on other interested parties. *Dataphase,* 640 F.2d at 114. In light of the harm Plaintiffs will suffer, this factor weighs in favor of entry of a preliminary injunction unless Defendants can demonstrate some harm from entry of an injunction. *See Sambo v. City of Troy,* No. 4:08-CV-01012(ERW), 2008 WL 4368155 (E.D. Mo. Sept. 18, 2008). Defendants cannot demonstrate any harm that will occur to them. The balance of harms weighs in favor of Plaintiff.

### V - Injunctive Relief Will Serve the Public Interest

13. The final factor to consider when determining whether to issue a temporary restraining order

is whether the issuance would be in the interest of the public. *Dataphase,* 640 F.2d at 114. Issuance of a restraining order in this case is in the public interest. "It is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon,* 509 F.3d 480, 485 (8th Cir. 2007), as modified on rehearing, 545 F.3d 685, 689 (8th Cir. 2008), *cert. denied* 129 S. Ct. 2865 (2009); s*ee also Johnson,* 351 F. Supp. 2d at 951 ("It is not in the public interest to allow police and other officials to engage in a pattern of constitutional violations").

### VII - Conclusion

14. Based on the foregoing, Plaintiff respectfully requests this Court enter an ex parte temporary restraining order requiring Defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them, to allow Plaintiffs to remain in Keiner Plaza until the merits can be decided on the merits. Because no cognizable harm will come to Defendants by issuance of an injunction—even if it were improperly entered—bond should be waived or set in a nominal amount.

Respectfully submitted,

\_\_\_\_/s/_____
Joseph P. Welch, #52414MO
Attorney for Plaintiffs
1708 Olive Street
St. Louis, MO 63103
Phone: (314) 367-4878
Fax: (314) 678-3998
Cell: (314) 494-9729
jpw@josephwelch.net


\_\_\_\_/s/_____
Maggie Ellinger-Locke, #63802
Attorney for Plaintiffs
797 West Terra Lane

7

                O'Fallon, MO 63366
                Office: (636) 978-8833
                Cell: (314) 805-7335
                Fax: (636) 281-1504
                ellinger.locke@gmail.com


                \_\_\_\_/s/_____
                Cynthia West, #61758
                Attorney for Plaintiffs
                625 N. Euclid Avenue, Suite 534
                St. Louis, MO 63108
                (314) 269-0439
                (314) 282-2693 facsimile
                cynthia@nnplc.org