UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERYL COMPTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 4:11-CV-01975 CEJ |
| v. ) | |
| ) | |
| ST. LOUIS METROPOLITAN POLICE ) | |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT CITY OF ST. LOUIS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF ST. LOUIS' RESPONSE IN OPPOSITION TO <u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

COMES NOW Defendant City of St. Louis, Missouri ("City"), by and through undersigned counsel, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, sets forth the following Memorandum of Law in Support of the City's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction:

**I.      Introduction**

Plaintiffs are challenging the constitutionality of City Ordinance 58262, codified as § 22.18.010 of the City of St. Louis Revised Code (hereinafter "§ 22.18.010" or the "Ordinance") which provides:

> No person shall loiter, idle, wander, stroll, play or otherwise be in or upon the confines of any public park or playground or the public areas immediately adjacent thereto between the hours of 10:00 p.m. and 6 a.m. throughout the year.

Plaintiffs purport to be members of the Occupy St. Louis "movement" and "desire to peacefully assemble and protest against the government and corporate interests." Complaint at ¶1. From October 1, 2011 through November 11, 2011, plaintiffs'

organization remained at Keiner Plaza in downtown St. Louis on a constant and continual basis in violation of, *inter alia*, § 22.18.010.  Complaint at ¶¶ 12, 19.  Mindful of the violence associated with the Occupy Oakland movement that took place in late October, the City employed a more diplomatic approach with plaintiffs' organization – ostensibly staying the enforcement of various City ordinances, including § 22.18.010 – to engage in discussions with plaintiffs.  However, after substantial discussions, plaintiffs expressed intent to remain in Keiner Plaza between the hours of 10:00 p.m. and 6:00 a.m.  On November 10, the City notified plaintiffs that, beginning November 11 at 3:00 p.m., any individual violating City ordinances, including § 22.18.010, would be summoned and/or arrested.

On November 11, in conjunction with co-defendant, St. Louis Metropolitan Police Department ("SLMPD"), SLMPD officers descended upon Keiner Plaza shortly after 10:00 p.m. and instructed plaintiffs' organization to leave the park or face arrest. The majority of the group left the park voluntarily, and those who refused were arrested for violating park curfew.  To their credit, plaintiffs' organization offered no resistance to the SLMPD efforts and peace was maintained throughout.

Plaintiffs unsuccessfully applied for a temporary restraining order on November 11.  For the reasons stated herein as well as the City's corresponding motion, the Court should also deny plaintiffs' motion for preliminary injunction.

**II.     Plaintiffs have Failed to State a Claim for Injunctive Relief**

   **A.  Standard of Review/Statement of Law**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc*., 129 S.Ct. 365, 374 (2008).

Plaintiffs seeking a preliminary injunction must establish more than a mere possibility of injury; they must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 375. Furthermore, an injunction cannot be used as punishment for past violations. *Belk v. Charlotte-Mecklenburg Bd. of Educ*. 269 F.3d 305, 347 (4th Cir. 2001).

"An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action." *Bloodgood v. Garraghty*, 783 F.2d 470, 475 (4th Cir. 1986). An injunction will issue "to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Id.* citing *Connecticut v. Massachusetts,* 51 S.Ct. 286, 291 (1931).

**B.  Plaintiffs do not have a Substantial Likelihood of Success on the Merits**

Plaintiffs have not—and cannot—establish that they are likely to succeed on the merits.  The content of communication enjoys virtually absolute First Amendment protection.  However, the manner of communication does not.  The Supreme Court has consistently ruled that federal, state and local governments may place reasonable restrictions on the time, manner and place of individual expression, so long as said restrictions are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of the information. *Heffron v. Int'l Soc. for Krishna Consciousness, Inc*., 452 U.S. 640, 647-48 (1981); *Virginia Pharmacy Board v.*

3

*Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976); see also *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 535 (1980).

The nature of a place and the pattern of its normal activities dictate the kinds of time, manner and place restrictions that are reasonable.  The crucial question in determining the reasonableness of a restriction is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. *Grayned v. City of Rockford*, 408 U.S. 104, 117 (1972).  In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed.  *Perry* at 45.  At one end of the spectrum are streets and parks which have immemorially been held in public trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.  *Id.*

The Supreme Court has developed a four-part analysis to evaluate the constitutionality of time, manner and place restrictions.  To pass First Amendment scrutiny, such restrictions must be: 1) content-neutral; 2) narrowly drawn; 3) serve a significant government interest; and 4) leave open alternative channels of communication.  *Heffron* at 647-48.  Regulations based on substantive content of the conveyed message are subject to strict scrutiny; thereby placing a burden on the state actor to show its regulation is necessary to serve a compelling government interest and is narrowly drawn to achieve that end.  *Perry* at 45.

On the other hand, content-neutral time, manner and place restrictions are subject to intermediate scrutiny.  Under that analysis, the government may impose reasonable time, manner and place restrictions of protected speech – even of speech in a public

4

forum – so long as the restrictions are justified without reference to content of the regulated speech, are narrowly tailored to serve a significant government interest, and leave open ample alternatives for communication of information.  *Ward v. Rock Against Racism*, 491 U.S. 781, 798-800 (1989).

Although time, manner and place restrictions on First Amendment speech must be narrowly tailored, the restrictions need not be the least intrusive means of serving the government interest.  *Id*. at 788-89.  It is immaterial that a government interest might be adequately served by some lesser restrictive alternative, and a content-neutral regulation is not invalid simply because there may exist a lesser burdensome alternative on speech.  *Id.* at 799.  So long as legislation "does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the street."  *Schneider v. State*, 308 U.S. 147, 160 (1939).

The principal inquiry in determining the content neutrality in time, manner and place cases is whether the government has adopted the regulation on speech because of a disagreement with the message the speech conveys.  *Clark v. Community for Creative Non Violence*, 468 U.S. 288, 295 (1984).  A regulation that serves purposes unrelated to the content of expression is deemed neutral.  *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986).

The plain language of § 22.18.010 shows that it is both content neutral and neutral in its application.  The Ordinance makes no reference to speech and applies to *anyone* wishing to use park facilities during the prohibited time.  As such, § 22.18.010 is content neutral.

5

Upon determination that the Ordinance is content-neutral, the analysis then turns to the issue of whether it is narrowly tailored to the serve a government interest. The validity of a regulation that infringes upon the exercise of First Amendment freedoms can be sustained only if the regulation is narrowly drawn to further a legitimate governmental objective unrelated to the restriction upon the exercise of First Amendment rights. *Heffron* at 649-50; *Virginia Pharmacy* at 771. Protecting the general public's enjoyment of park facilities, promoting the viability and maintenance of park facilities, promoting the public's health, safety and welfare, and protecting the City's park facilities from overuse and unsanitary conditions are all legitimate governmental interests. A municipality certainly has the power to regulate activities within its boarders to increase the safety of its citizens. *ACORN v. Frontenac*, 714 F.2d 813, 818 (8th Cir. 1983).

The next inquiry, after concluding the City's objectives are legitimate, is to determine whether the regulation is narrowly tailored to promote a "substantial government interest that would be achieved less effectively absent the regulation." *Ward* at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes the government's interest could be adequately served by some less-speech-restrictive alternative." *Id*. "[T]he validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it further the government's interest in an individual case." *Id*. at 801.

Using the *Ward* holding as a guide in application to the facts at issue, it is apparent that § 22.18.010 is sufficiently tailored to promote the City's objectives. The

6

Ordinance is limited to City parks and limited to eight hours a day between the hours of 10:00 p.m. and 6:00 a.m.  Section 22.18.010 does not prevent Plaintiffs from conducting their expressive activities twenty-four hours a day on adjoining sidewalks or in other public spaces if they so choose.  It merely prevents them, as well as anyone else, from doing so by remaining or loitering in City parks after the hours established by the Ordinance.  It is therefore neither over-broad, nor is it under-inclusive.  The fact that § 22.18.010 applies to parks and not to sidewalks or other public places does not lead inevitably to the conclusion that the hours restrictions are intended to stifle free expression in City parks, as Plaintiffs suggest.

Section 22.18.010 is not substantially broader than necessary to achieve the City's interests and therefore passes the second part of the test that it must be narrowly tailored to serve a significant government interest.  *Ward* at 799.

The fourth and final prong of analysis is whether § 22.18.010 leaves open ample channels of communication.  *Id*. at 802.  The plain language of § 22.18.010 does not reference or prohibit any form of communicative activity.  While it does prohibit occupation of park facilities during the hours of 10:00 p.m. and 6:00 a.m., it does not prohibit the use of any non-park facilities during that time period.

Section 22.18.010 is not a blanket prohibition on demonstrating in City park facilities.  The parks, streets and sidewalks in the City are quintessential public *fora* that have historically and traditionally been used for public assembly and debate.  Section 22.18.010 is only employed when individuals attempt to occupy park facilities during the prohibited hours.  Section 22.18.010 in no way prohibits groups like plaintiffs' from

peaceably demonstrating in a park from 6:01 a.m. until 9:59 p.m., or from demonstrating in non-park facilities.

### C. Plaintiff's will not Suffer Irreparable Harm Absent Injunctive Relief

Plaintiffs have failed to demonstrate that they are likely to suffer irreparable injury in the absence of preliminary relief.  Rather, Plaintiffs' attempt to establish a mere *possibility* of future injury.  Further, they have not established that injury is likely without an injunction.  Plaintiffs cannot suffer irreparable injury because § 22.18.010 provides ample alternative modes of dissemination of their political message.  Plaintiffs do not have a constitutional right under the First Amendment to occupy a City park during the prohibited curfew hours.

"An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action." *Bloodgood* at 475.  An injunction will issue "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Id.*

Here, Plaintiffs cannot prove imminent danger absent an injunction.  The majority of plaintiffs' organization peacefully heeded the SLMPD warnings and many returned to Keiner Plaza the next morning when it was lawful to do so.

### D. The Balance of Equities does not Tip in Plaintiffs' Favor

Plaintiffs fail to mention any facts demonstrating that the balance of equities tip in their favor, absent conclusory statements to that effect.  The legitimate purposes of the Ordinance are: (1) the general public's enjoyment of park facilities; (2) the viability and maintenance of those facilities; (3) the public's health, safety and welfare; and (4) the protection of the City's parks and public property from overuse and unsanitary

8

conditions, none of which can be furthered by the grant of a preliminary injunction. Furthermore, Keiner Plaza is merely one of many parks in the City, and to invalidate § 22.18.010 would have City-wide consequences regarding curfew enforcement.

### E.  Preliminary Injunction will not Serve the Public Interest

Issuance of a preliminary injunction in this case is not in the public interest.  The purposes of § 22.18.010 are, in addition to maintaining park faculties for the use and enjoyment of the citizenry, protecting public health and the environment.  Because the purpose of the statute is to protect the public, it would be contrary to the public's interest for an injunction to be issued.

### III.  Conclusion

For the foregoing reasons, this Court should enter an Order denying Plaintiffs' Motion for Preliminary Injunction, awarding the City its reasonable attorneys' fees expended herein and for such other and further relief the Court deems equitable in this matter.

    Respectfully submitted,
    PATRICIA A. HAGEMAN
    CITY COUNSELOR

    /s/ Donald G. Dylewski
    Donald G. Dylewski   #25325MO
    Associate City Counselor
    Attorney for Defendant City of St. Louis and
    Room 314, City Hall
    St. Louis, MO  63103
    314.622.3361
    FAX: 314.622.4956
    DylewskiD@stlouiscity.com

**Certificate of Service**

I hereby certify that on November 14, 2011, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

Joseph P. Welch
1708 Olive Street
Saint Louis, MO  63103
Attorney for Plaintiffs

Maggie Ellinger-Locke
797 West Terra Lane
O'Fallon, MO  63366
Attorney for Plaintiffs

Cynthia West
625 N. Euclid Ave., Suite 534
Saint Louis, MO  63108
Attorney for Plaintiffs

                                                            /s/ Donald G. Dylewski