IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Cheryl Compton, et al., | ) |
| | ) No. 4:11-cv-01975-CEJ |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| St. Louis Metropolitan Police Department, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF THEIR CLAIM FOR INJUNCTIVE RELIEF**

Injunctive relief is "an equitable remedy shaped to right an ongoing wrong." Kohl v. Kohl v. Woodhaven Learning Cntr., 865 F.2d 930, 934 (8th Cir. 1989). Injunctive relief will be granted upon consideration of the following factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between the harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Systems, Inc. v. C.L. Systems, 640 F.2d 109, 1994 (8th Cir. 1981) (*en banc*).

In this case, consideration of these factors compels immediate, preliminary and permanent injunctive relief. Plaintiff has no adequate remedy at law. Plaintiffs have suffered and will continue to suffer irreparable harm if not allowed to exercise their freedom of speech. The balance of interests demonstrates that the harm to Plaintiffs from the chilling effect on free speech outweighs any injury that this injunction would inflict on Defendants. There is a high probability that Plaintiff will succeed on the merits, and a preliminary injunction will serve the public interest.

**A.     Injunctive Relief Is Proper Because Plaintiffs Suffer and Will Continue to Suffer Irreparable Harm.**

Injunctive relief is proper where Plaintiff suffers irreparable harm. Dataphase, supra. Here, Defendants have previously deprived Plaintiffs from exercising their rights to free speech protected by the First and Fourteenth Amendments of the United States Constitution and Art. I, Section 8 of the Missouri Constitution, by threatening to evict them from Keiner Plaza by threatening arrest for violation of the curfew and structures ordiance, and by actually forcibly arresting them for violating the curfew ordinance. By chilling dissenting speech and preventing the speakers from being heard, Defendants have caused irreparable harm to Plaintiffs and will continue to do so in the future, unless enjoined from doing so.

Violation of Constitutional rights per se creates irreparable harm warranting injunctive relief. Any loss of First Amendment liberties, even briefly, "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Supreme Court has long "recognized that the First Amendment reflects 'a profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open,'" *Boos*, 485 U.S. at 318 (quoting *Sullivan*, 376 U.S. 254.) Plaintiffs have a right to demonstrate and air their views, and each and every violation of this right creates injury that cannot be repaired. The harm here is immediate - its impact exists right now and will continue into the future, and is irreparable.

**B.     The Balance of Harms Clearly Favors Injunctive Relief.**

A preliminary injunction is proper where the balance of harms favors such relief. *Dataphase, supra.* Here, the Defendants will not suffer substantial harm from allowing Plaintiffs to peacefully occupy and protest at Keiner Plaza, while the chilling effect of

Plaintiffs deprivation of their ability to air their views is irreparable, and can not be overridden by the government's interest in preventing inconvenience or unrest. "Public inconvenience, annoyance or even unrest can never justify a curtailment of speech in a public forum." *Irish Subcommittee of Rhode Island Heritage Com'n v. Rhode Island Heritage Com'n,* 646 F.Supp. 347, 355 (D.R.I. 1986). While the Defendants' interest in protecting Keiner Plaza "undoubtedly a significant government interest," that interest would be more compelling if it had been exercised on day one of the occupation, not day forty-two. Moreover, allowing Plaintiffs' peaceful occupation does not conflict with the government's interests in promoting safety, security and convenience. The effect of this injunction will serve only to allow peaceful demonstrators to attend and participate, consistent with the First Amendment; it will not prevent Defendants from taking appropriate measures to address legitimate harms such as violence. Accordingly, the balance of interests clearly favors the plaintiff's right to be free from unconstitutional restriction on their rights to free speech.

      **C.    There Is A High Probability of Success on the Merits.**

A preliminary injunction is proper where there is a high probability of success on the merits. *Dataphase, supra.* The facts here demonstrate that Defendants actions restricting freedom of speech by removing them from Keiner Plaza by arrest, and the threat of arrest, constitutes an infringement of their rights under the First and Fourteenth Amendments to the U.S. Constitution, and Art. I, Section 8 of the Missouri Constitution. "Any scheme that precludes plaintiffs from effectively communicating with those delegates will not withstand constitutional scrutiny." *Service Employee*, 114 F.Supp. at 972.

The Supreme Court has recognized the value of protecting robust debate, and holds political speech at the apex of its protection. Political or controversial speech stands at the "highest rung of the hierarchy of First Amendment values." *See Claiborne Hardware*, 458 U.S. at 913; *Connick*, 461 U.S. at 145; *Sullivan*, 376 U.S. at 270. The importance of political speech "has led us to scrutinize carefully any restrictions on public issue picketing," *Boos*, 485 U.S. at 318.

Thus the government has no power to restrict expression because of its message, ideas, subject matter or content. *Chicago Police Dept. v. Mosley*, 408 U.S. 92 (1972). "The vice to be guarded against is arbitrary action by officials." *Niemotko v. Maryland*, 340 U.S. 268, 285 (1951) (Frankfurter, J., concurring). "At the heart of the First Amendment lies the principle that each person should decide for him or herself the ideas and beliefs deserving of expression, consideration and adherence. Our political system and cultural life rest upon this ideal. . . Government action that stifles speech on account of its message, or that requires the utterance of a particular message favored by government contravenes this right." *Turner Broad. Sys., Inc. v. FCC*, 114 S.Ct. 2445, 2458 (1994). The Court has thus applied "the most exacting scrutiny" to government actions that "suppress, disadvantage, or impose differential burdens upon speech because of its content." *Id.* at 2459.

The Keiner plaintiffs have been threatened with arrest and eviction, and have in fact been arrested and evicted from Keiner Plaza, while those expressing no political views have been allowed to sleep in the park, remain after curfew, and to erect tents and other structures.

Even if Defendants' treatment of demonstrators is content-neutral, government

may still not restrict any speech activities in a manner that is more restrictive than necessary to achieve a compelling government interest. Even if all citizens attending an event are subject to a designated area, the government's measure must meet strict scrutiny, and can not unduly chill the ability of the speaker to get out his message. Demonstrations, protest marches, and picketing are among those activities protected by the First Amendment. *Edwards v. South Carolina*, 372 U.S. 229 (1963); *Thornhill v. Alabama*, 310 U.S. 88 (1940). Public streets and sidewalks are traditional public fora which "occupy a 'special position in terms of First Amendment protection,'" in which "the government's ability to restrict expressive activity is very limited." *Boos*, 485 U.S. at 318.

While government has a legitimate interest in securing the safety and security of their public parks, it must do so in a way that is narrowly tailored and limits speech no more than necessary to achieve those goals. Government may not prohibit or quiet angry or inflammatory speech in a public forum unless it is "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) *(per curium)*. Preventing speech that is distasteful or likely to cause dispute or unrest is insufficient to meet the state's strict burden. Indeed, "a function of free speech under our system of government is to invite dispute. It may indeed serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminello v. Chicago*, 337 U.S. 1, 4 (1949). Even the government's interest in protecting the President, a much more important interest than protecting public parks, must be countered by fundamental rights to free speech:

> "But we cannot agree with the Government's argument that mere mention of the President's safety must be allowed to trump any first Amendment issue. While courts must listen with the utmost respect to the conclusion of those entrusted with responsibility for safeguarding the President, we must also assure ourselves that those conclusions rest upon solid facts and a realistic appraisal of the danger rather than vague fears extrapolated beyond any foreseeable threat. . ."

*Sparrow v. Goodman,* 361 F.Supp. 566, 586 (W.D. NC 1973), aff'd sub nom *Rowley v. McMillian,* 502 F.2d 1326 (4th. Cir. 1974), quoting *Quaker Action Group v. Hickel*, 421 F.2d 1111, 1117-18 (D.C. Cir. 1969). In *Sparrow*, the court issued an injunction enjoining the government from treating certain protesters differently because of their viewpoints or "peaceful expression of political (including dissenting) views, exercise of constitutional rights of free speech, petition for redress of grievances or right of association, without prior judicial authorization or without probable cause or for any other cause not rationally necessary for the personal safety of the President." *Id.* at 587-88.

### D.   A Preliminary Injunction Will Serve the Public Interest.

A preliminary injunction is proper where it promotes the public interest. *Dataphase, supra.* This case has a wide impact on the First Amendment rights of the citizens and taxpayers in the community to peacefully and freely exercise their right to speak and air their views. The Supreme Court has long recognized the importance of a "marketplace of ideas" flowing from the First Amendment right of free speech and has consistently protected and encouraged "uninhibited, robust, and wide-open debate" on public issues. *Sullivan,* 376 at 270. By strictly enforcing the curfew and structures ordinances and removing the plaintiffs from Keiner Plaza, Defendants violate the letter and spirit of the First Amendment.

## THE PRELIMINARY INJUNCTION SHOULD BE GRANTED WITHOUT BOND

Plaintiff in this case should not be required to post bond for injunctive relief to be ordered. The amount of bond, if any, required by Fed.R.Civ.P. 65c, "rests within the discretion of the trial court." *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). "Since the amount of the security rests within the discretion of the district judge, the matter of requiring a security in the first instance [also rests] within the discretion of the district judge." *Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972)*. Where, as here, it is unlikely that Defendants will incur any significant costs or damages as the result of an injunction, no bond should be required. *See Cohen v. Coahoma County, Miss.*, 805 F.Supp. 398, 408 (N.D. Miss. 1992); *See also Martin v. Constance*, No. 4:90CV00833GFG (E.D. Mo., May 23, 1990).

Respectfully submitted,

__/s/_____
Joseph P. Welch, #52414MO
Attorney for Plaintiffs
1708 Olive Street
St. Louis, MO 63103
Phone: (314) 367-4878
Fax:    (314) 678-3998
Cell:   (314) 494-9729
jpw@josephwelch.net

__/s/_____
Maggie Ellinger-Locke, #63802
Attorney for Plaintiffs
797 West Terra Lane
O'Fallon, MO 63366
Office: (636) 978-8833
Cell: (314) 805-7335
Fax: (636) 281-1504

ellinger.locke@gmail.com

\_\_/s/_____
Cynthia West, #61758
Attorney for Plaintiffs
625 N. Euclid Avenue, Suite 534
St. Louis, MO 63108
(314) 269-0439
(314) 282-2693 facsimile
cynthia@nnplc.org